# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

WILLIAM BEASLEY,

                Petitioner,                Case Number: 2:12-13936
                                          HONORABLE GERALD E. ROSEN

v.

JEFFREY WOODS,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner, William Beasley, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, challenges his convictions for first-degree felony murder, assault with intent to rob while armed, breaking and entering, felonious assault, and three counts of felony-firearm. Respondent argues that the petition should be denied because it was not timely filed and the claims are meritless. For the reasons discussed, the Court denies the petition.

### I.  Background

Petitioner's convictions arise from the shooting death of George Eccles and the assault of Joseph Thomas in February 1989. Michael Thomas testified that, on February 18, 1989, he and George Eccles were walking toward a friend's house in the city of Pontiac, when they saw two men, Petitioner and co-defendant Alonzo Bradford exit the

home.  Bradford picked up a rifle and asked them for money.  Eccles and Michael began walking away.  Bradford fired gunshots into the air.  After a pause, there were more gunshots and Michael realized Eccles had been shot.  Michael looked back and saw Petitioner holding the rifle.  Michael fled the scene.  When he returned to his home, he found that his back door had been kicked in and there were bullet holes in the side of the house.

Pontiac Police officer Michael Miles responded to the police call regarding a shooting at approximately 2:30 a.m.  He found Charles Eccles lying on the ground in a pool of blood.  Eccles was transported to the Pontiac Osteopathic Hospital where he later died.  Dr. Linda Biedryzcki testified that she performed an autopsy on Charles Eccles.  She observed four gunshot wounds, one to the back of the head, two to the victim's back, and a fourth to his hip.  She testified that, based upon the nature of the victim's injuries, the victim likely was running at the time he was shot.

Arthur Smith testified that, at approximately 2:00 a.m. on February 19, 1989, his cousin Alfonso Bradford, accompanied by Petitioner, found Smith at a friend's house and asked to borrow Smith's 1986 Cadillac.  Smith initially denied the request, but, Bradford became agitated, so Smith allowed Bradford to borrow the vehicle.  Smith next saw the vehicle four days later at the police station.

Joseph Thomas III, testified that he and his brother Michael shared a home in Pontiac.  At approximately 3:00 a.m. on February 19, 1989, Joseph was awakened by a loud knocking on the door.  Two men he identified as Petitioner and Bradford kicked

2

open the home's door and entered without permission.  The men, who were carrying a

rifle, went upstairs.  A few moments later they left.  Joseph went to close the front door

and heard gunshots.  He dropped to the floor and slammed the door shut.  The next

morning, Joseph saw six or seven bullet holes in the side of his house.

Petitioner went to the Pontiac Osteopathic Hospital the same morning Eccles

arrived.  Petitioner was suffering from a gunshot wound.  A nurse went through

Petitioner's clothing to inventory any valuables.  She found eleven bullets in Petitioner's

jeans, which she turned over to police.

Henry Steigmeyer, a security officer working at Pontiac Osteopathic Hospital

during the early morning hours of February 19, 1989, testified that he saw a Cadillac

speed into the parking lot and stop suddenly in front of the emergency room entrance.

Two men exited the Cadillac and ran into the emergency room.  Steigmeyer observed the

Cadillac had several bullet holes.  He looked into the vehicle and saw some live and some

spent .22 caliber rounds and casings on the floor.  A Michigan State Police firearms

expert testified that a .22 caliber slug taken from Eccles' body was fired from the same

rifle as the spent shell casings found in the Cadillac.

Petitioner did not present any witnesses in his defense.  A jury convicted him of

first-degree felony murder, assault with intent to rob while armed, breaking and entering,

felonious assault, and three counts of felony firearm, third offense.  On October 20, 1989,

he was sentenced to life imprisonment for the murder and assault convictions, 10 to 15

years' imprisonment for the breaking and entering conviction, 2-1/2 to 4 years'

3

imprisonment for the felonious assault conviction, and 10 years' imprisonment for each of the felony firearm, third offense convictions.

Petitioner filed an appeal of right, raising four claims of error. The Michigan Court of Appeals affirmed his convictions. *People v. Beasley,* No. 122826 (Mich. Ct. App. Dec. 23, 1991). Petitioner did not seek leave to appeal in the Michigan Supreme Court. *See* Affidavit of Corbin R. Davis, 11/14/12, Dkt. # 7-3.

Petitioner filed a motion for relief from judgment in the trial court on January 7, 2003. On February 3, 2009, the trial court granted Petitioner's request to withdraw his motion for relief from judgment. He filed another motion for relief from judgment on March 30, 2009, raising six claims for relief. The trial court denied the motion. *People v. Beasley*, No. 89-091260-FC (Oakland County Cir. Ct. Apr. 15, 2010). The Michigan Court of Appeals denied leave to appeal on October 4, 2011. *People v. Beasley*, No. 303214 (Mich. Ct. App. Oct. 4, 2011). The Michigan Supreme Court denied leave to appeal on June 25, 2012. *People v. Beasley,* 491 Mich. 941 (Mich. June 25, 2012).

Petitioner filed the pending habeas petition on August 25, 2012.

## II. Discussion

Respondent argues that the petition is barred by the one-year statute of limitations. A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due

4

diligence." 28 U.S.C. § 2244(d)(1)(A) & (D).  The one-year limitation period begins at

the deadline for filing a petition for a writ of certiorari to the United States Supreme

Court.  *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  In addition, the time during

which a prisoner seeks state-court collateral review of a conviction does not count toward

the limitation period.  28 U.S.C. § 2244(d)(2); *Ege v. Yukins*, 485 F.3d 364, 371-72 (6th

Cir. 2007).  A properly filed application for state post-conviction relief, while tolling the

limitation period, does not re-fresh the limitation period.  *Vroman v. Brigano*, 346 F.3d

598, 602 (6th Cir. 2003).

Petitioner appealed his conviction first to the Michigan Court of Appeals, but not

to the Michigan Supreme Court.  Michigan Court Rule 7.302(C)(3) allows a defendant

fifty-six days from the date of the Michigan Court of Appeals' decision to file a delayed

application for leave to appeal.  Petitioner did not file an application for leave to appeal to

the Michigan Supreme Court.  Thus, his conviction became final when the time for

seeking such review expired, February 17, 1992. *See Redmond v. Jackson*, 295 F. Supp.

2d 770, 767 (E.D. Mich. 2003) (Gadola, J.) (holding that conviction becomes final when

the 56-day time period for filing a delayed application for leave to appeal in the Michigan

Supreme Court expires); *Brown v. McKee*, 232 F. Supp. 2d 761, 765 (E. D. Mich. 2002)

(Rosen, J.) (same); *Erwin v. Elo*, 130 F. Supp. 2d 887, 889 (E.D. Mich. 2001) (Tarnow,

J.) (same).  Where a state court conviction becomes final before the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132,

110 Stat. 1220 (April 26, 1996), the limitations period commences on the AEDPA's

5

effective date, April 24, 1996.  *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir 2002).   The

limitations period expired one year later, on April 24, 1997.

Petitioner's motion for relief from judgment did not toll the limitations period.  His

first motion for relief from judgment (which he later voluntarily withdrew) was filed on

January 7, 2003, almost six years after the limitations period already expired.  *Vroman*,

346 F.3d at 602 (6th Cir. 2003) (holding that the filing of a motion for collateral review in

state court serves to "pause" the clock, not restart it).

Equitable tolling is available to toll a statute of limitations when "'a litigant's

failure to meet a legally-mandated deadline unavoidably arose from circumstances

beyond that litigant's control.'"  *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010),

*quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-

61 (6th Cir. 2000).  The one-year limitations period applicable to § 2254 is "subject to

equitable tolling in appropriate cases."  *See Holland v. Florida*, 560 U.S. 631, 645 (2010).

To be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing

his rights diligently, and (2) that some extraordinary circumstance stood in his way' and

prevented timely filing."  *Lawrence v. Florida*, 549 U.S. 327, 336 (2007), *quoting Pace v.

DiGuglielmo*, 544 U.S. 408, 418 (2005).  A claim of actual innocence may also justify

equitable tolling in certain circumstances.  *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir.

2005).  A petitioner bears the burden of showing that he is entitled to equitable tolling.

*Robertson*, 624 F.3d at 784.

To the extent that Petitioner argues that his claim of actual innocence should

6

equitably toll the limitations period, this claim is not supported by the record.  A credible claim of actual innocence may equitably toll the one-year statute of limitations.  *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005).  To determine whether a petitioner has satisfied the requirements for establishing a cognizable claim of actual innocence to warrant equitable tolling, the court applies "the same actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim."  *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007), *citing Souter*, 395 F.3d at 596.  A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.  "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case."  *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted).  A court presented with new evidence must consider it in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."  *Id.*, 547 U.S. at 538 (citation omitted).  "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'"  *Id.* (*quoting Schlup*, 513 U.S. at 329).  This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that

7

more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 538.

Petitioner claims that a 2008 affidavit from Charles Burton is newly-discovered evidence establishing his actual innocence. In his affidavit, dated November 15, 2008, Burton states that he saw Eccles shot under different circumstances than those testified to at trial by Michael Thomas, who was with Eccles at the time of the shooting. According to Burton, Burton gave Eccles and another unidentified man a ride during the early morning hours of a day in mid- to late-February 1989. Eccles asked for a ride so they could purchase drugs. Burton dropped the men off near a car in Pontiac. Burton observed Eccles speak to an unidentified man in a vehicle, and then Eccles fired shots into the vehicle. Burton then drove away, last seeing Eccles running after his car while continuing to fire shots in the direction of the parked vehicle.

Burton's affidavit does not represent the type of credible evidence leading to the conclusion that it is more likely than not that no reasonable juror would have voted for conviction had they heard this evidence. Several factors call into question the credibility of Burton's statement. Burton waited almost 10 years after the event to execute an affidavit. The affidavit is vague as to date and location and, therefore, is not inconsistent with a finding that Petitioner shot Eccles. Burton's affidavit fails to discredit the abundance of incriminating evidence offered at trial, including this evidence: Petitioner arrived at the emergency room on the same morning of the shooting suffering from a gunshot wound; a nurse found eleven bullets in Petitioner's pants pockets; and spent shell

casings fired from the same gun that fired the fatal gunshots were found in the vehicle that brought Petitioner to the emergency room.  In light of this evidence, Petitioner has failed to show entitlement to equitable tolling on the basis of actual innocence.

### III.  Certificate of Appealability

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604 (2000) . "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*  In such a circumstance, no appeal is warranted. *Id.*

The Court declines to issue Petitioner a certificate of appealability, because reasonable jurists would not find it debatable whether this Court was correct in

determining that Petitioner filed his habeas petition outside of the one-year limitations period and equitable tolling is not warranted.  Nor should Petitioner be granted an application for leave to proceed on appeal in forma pauperis.  See Fed. R.App. P. 24(a).

## IV.  Conclusion

The Court finds that Petitioner failed to file his habeas petition within the applicable one-year limitations period.  Accordingly, the petition for a writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that the Court DECLINES to issue Petitioner a certificate of appealability and DENIES him an application for leave to appeal in forma pauperis.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  February 12, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 12, 2015, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

10